# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

THE CITY OF GOODLETTSVILLE, TN,     )
and THE CITY OF BRENTWOOD, TN,    )
on behalf of themselves and all similarly situated )
taxing authorities within the State of Tennessee, )
                                  )
       Plaintiffs,                  )
                                  )
v.                                 )     **Case No. 3:08-0561**
                                  )     **Judge Trauger**
PRICELINE.COM, INC., *et al.*,         )
                                  )
       Defendants.             )

## MEMORANDUM

Pending before the court is the defendants' Motion to Dismiss (Docket No. 49), to which the plaintiff City of Goodlettsville[1] has responded (Docket No. 61), the defendants have replied (Docket No. 95), and the plaintiff has sur-replied (Docket No. 105). For the reasons discussed herein, the defendants' motion will be denied.

## BACKGROUND

The plaintiff in this matter is the City of Goodlettsville, a political subdivision of the state of Tennessee.[2] The defendants, which include Priceline.com, Inc., Travelocity.com, L.P., Expedia, Inc., and Orbitz Worldwide, Inc., as well as certain subsidiaries and corporate siblings of those entities, are all internet travel companies. This case arises from the defendants' alleged

---

[1]The parties have stipulated to the voluntary dismissal of the plaintiff City of Brentwood. (Docket No. 59.)

[2]Unless noted otherwise, the facts are drawn from the Complaint. (Docket No. 1.)

failure to remit certain hotel occupancy taxes to the City of Goodlettsville, which brings suit on behalf of both itself and similarly-situated municipalities in the state of Tennessee.

Internet travel companies ("ITCs") offer services to hotels and consumers through two different business models: the "Agency Model" and the "Merchant Model." Under the Agency Model, an ITC functions as a hotel's agent, booking consumers into rooms at a given hotel, charging a service fee to the hotel, and, sometimes, charging a service fee to the consumer as well. The hotel sets the price of the room and is the merchant of record for the transaction, and the consumer pays the hotel directly. Under the Merchant Model, by contrast to the Agent Model, an ITC purchases rooms from a hotel at negotiated wholesale rates and then re-sells those rooms to consumers at higher retail rates. According to the allegations in the Complaint, the Merchant Model has become the dominant business paradigm for ITCs in recent years and is employed by all of the defendants. It is transactions pursuant to the Merchant Model that form the basis of the plaintiff's claims.

The City of Goodlettsville (the "City") is a taxing authority empowered by law to levy and collect taxes. The Goodlettsville City Code provides that a hotel occupancy tax is levied "upon the privilege of occupancy in any hotel of each transient in an amount equal to three percent (3%) of the consideration charged by the operator." Goodlettsville City Code § 5-502. That tax is to be collected from "transients" (guests) and remitted to the City by "all operators who lease, rent or charge for occupancy within a hotel in the City of Goodlettsville." *Id.* § 5-504. This case is one of many brought in recent years by municipalities around the nation alleging similar claims for non-remittance of hotel occupancy taxes against ITCs such as the defendants. Specifically, the plaintiff here alleges that the defendants do not remit hotel

2

occupancy taxes as required by the Goodlettsville City Code. According to the plaintiff, in the first part of a transaction under the Merchant Model, in which the defendants purchase rooms from hotels, the hotels collect from the defendants and remit to the City the applicable hotel occupancy tax based on the wholesale rate paid by the defendants. However, the plaintiff alleges that, in the second part of Merchant Model transactions, in which the defendants re-sell rooms to consumers, the defendants collect from consumers the applicable hotel occupancy tax based on the retail rate paid by the consumers but do not remit those amounts to the City. Thus, the plaintiff alleges that the tax it receives is based on the lower wholesale rate paid by the defendants, rather than the higher retail rate paid by consumers. The plaintiff asserts that the defendants are obligated to remit taxes based on the retail rate that they charge consumers and, thus, that it is entitled to these amounts, as well as penalties, costs, and interest as a result of the defendants' alleged failure to remit taxes in violation of the Goodlettsville City Code. The plaintiff additionally asserts claims of unjust enrichment and conversion.

## ANALYSIS

The defendants have moved to dismiss all of the plaintiff's claims arguing, first, that the plaintiff failed to exhaust its administrative remedies and, second, that the plaintiff failed to state causes of action under the Goodlettsville City Code, for unjust enrichment, and for conversion.

### I. Failure to Exhaust Administrative Remedies

The defendants assert that the plaintiff was obligated to exhaust its administrative remedies and failed to do so and, thus, that this court lacks jurisdiction over this case.

The doctrine of exhaustion of administrative remedies exists "to prevent premature interference with agency processes" so that an agency can "(1) function efficiently and have an

3

opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review."[3] *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 (Tenn. 1997) (citing 2 Am. Jur. 2d *Administrative Law* § 505 (1994)). Additionally, "an agency has an interest in discouraging frequent and deliberate flouting of the administrative process." *Id.*

Under the doctrine, where a statute provides an administrative remedy, a party seeking relief must exhaust the administrative remedy before a court has jurisdiction to act. *Tenn. Enamel Mfg. Co. v. Hake*, 194 S.W.2d 468, 470 (Tenn. 1946) ("The doctrine of exhaustion of administrative remedies requires that where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act.") (citation and quotation omitted); *see also Bracey v. Woods*, 571 S.W.2d 828, 829 (Tenn. 1978). There are, however, three exceptions to the doctrine. First, where a party asserts a challenge to the validity of an ordinance or statute that the administrative agency would apply, exhaustion of administrative remedies is not required. *B.F. Nashville, Inc. v. City of Franklin*, No. M2003-00180-COA-R3-CV, 2005 Tenn. App. LEXIS 32, at *18 (Tenn. Ct. App. Jan. 21, 2005) (citing *Poteat v. Bowman*, 491 S.W.2d 77, 80 (Tenn. 1973)). Second, a party seeking judicial review need not exhaust administrative remedies where the party raises only questions of law rather than

---

[3]Although the parties do not address the question of whether Tennessee or federal law governs the exhaustion analysis, other federal district courts sitting in diversity jurisdiction have applied state law to determine whether administrative remedies were required to be exhausted prior to a party's assertion of a state-law claim. *See, e.g.*, *Spahr v. Leegin Creative Leather Prods.*, No. 2:07-cv-187, 2008 U.S. Dist. LEXIS 90079, at *46-47 (E.D. Tenn. Aug. 20, 2008); *City of Charleston v. Hotels.com L.P.*, 520 F. Supp. 2d 757, 771 (D.S.C. 2007).

4

questions of fact.  *Id.* (citing *Bracey*, 571 S.W.2d at 830).  Finally, exhaustion is not required

where the administrative process would prove futile or useless.  *Id.* at *18-19 (citing *State v.*

*Yoakum*, 297 S.W.2d 635, 642 (Tenn. 1956)).

The City of Goodlettsville derives its authority to impose the tax at issue here from a

Tennessee state statute providing for a "Tourist Accommodation Tax."  Tenn. Code Ann. §§ 7-4-

101 to -112 (the "Enabling Act").  The Enabling Act, among other things, authorizes

municipalities such as the City to impose hotel occupancy taxes like that at issue here.  *Id.* § 7-4-

102(c).  The Enabling Act also provides that municipal taxing authorities "shall have, as

additional powers, those powers and duties with respect to the collection of taxes provided in

title 67 or otherwise provided by law."  *Id.* § 7-4-108.  Pursuant to its authority under the

Enabling Act, the City has enacted an ordinance levying a hotel occupancy tax in the amount of

three percent of the consideration charged to a transient by a hotel operator.  Goodlettsville City

Code § 5-501 to -510 (the "Tax Ordinance").  The Tax Ordinance, like the Enabling Act, adopts

by reference Title 67 of the Tennessee Code, expressly providing that, "[u]pon any claim of

illegal assessment and collection, the tax payer shall have the remedy provided in [Title 67]" and

that "[t]he recorder shall also have all of those powers and duties as provided in Tennessee Code

Annotated, § 67-1-707(b)."  *Id.* § 5-509.

Title 67, in turn, provides a procedure by which a taxing authority may attempt to recover

unpaid taxes:

> When any person shall fail to file any statement, report or return required to be
> filed with the commissioner [or taxing authority] by any law levying a public tax,
> license or fee, *after being given written notice of the assessment*, the
> commissioner [or taxing authority] is authorized to determine that liability of such
> person from whatever source of information may be available to the
> commissioner [or taxing authority].  An assessment made by the commissioner

5

[or taxing authority] pursuant to this authority shall be binding as if made upon the sworn statement, report or return of the person liable for the payment of any such tax, license or fee. Any such assessment that is lawfully made against such person shall be presumed accurate, unless records are submitted evidencing otherwise.

Tenn. Code Ann. § 67-1-1438 (emphasis added). Title 67 additionally provides that a lien arises in favor of the taxing authority only after an initial assessment of liability:

If any person liable to pay any state tax or fee . . . neglects or refuses to pay the tax or fee, the amount, including additionally incurred taxes, fees, penalties, interest, and costs, shall be a lien in favor of the state. *Such lien shall arise at the time an initial assessment of any liability is made*, and it shall continue until the amounts of the original assessment and any subsequent assessments of liability for taxes, fees, penalties, interest, or costs are fully paid.

*Id.* § 67-1-1403(a) (emphasis added). The taxing authority is then empowered to bring suit to enforce the lien. *See id.* § 67-1-1432.

The defendants assert that these provisions collectively establish that the City of Goodlettsville was obligated to issue a tax assessment and determine the defendants' liability prior pursuing judicial relief. The plaintiff does not dispute that it did not do so. The defendants argue, therefore, that the plaintiff has not pursued, let alone exhausted, administrative remedies. The plaintiff argues, however, that it is not obligated to exhaust administrative remedies because the principal question presented by its lawsuit is a strictly legal issue, because the pursuit of administrative remedies would be futile, and because the administrative remedies were not mandatory.

Taking the last of these arguments first, the exhaustion of administrative remedies is only mandatory where the "plain words" of the statute so require. *Thomas*, 940 S.W.2d at 566. When not mandated by statute, exhaustion is a matter of judicial discretion. *Id.* at 566 n.5. Additionally, the exhaustion requirement does not apply where administrative remedies are

6

"cumulative to or concurrent with a judicial remedy." *Reeves v. Olsen*, 691 S.W.2d 527, 530 (Tenn. 1985) (quotation and citation omitted). Here, the relevant provisions of the Tennessee code, which were expressly adopted both in the Enabling Act and in the Tax Ordinance itself, spell out a process by which a taxing authority may pursue an unpaid tax. The taxing authority must provide written notice, after which time the taxing authority may make an assessment of tax liability. That assessment gives rise to a lien in the municipality's favor, which the municipality may then bring suit to enforce.

The statutory language provides that the municipality's authority at each stage is predicated on its previous actions, and, thus, that authority does not arise in the absence of those prerequisites. The fact that the Tax Ordinance places the burden of collection and remittance on the hotel operator rather than the taxing authority does not, as the plaintiff alleges, alter the specified statutory process by which the City is permitted to pursue a tax obligation that a hotel operator has failed to collect and remit. Moreover, the prescribed notice and assessment procedure is not simply cumulative or concurrent to a judicial remedy. Although the Enabling Act characterizes a taxing authority's powers under Title 67 as "additional powers," the fact is that Title 67 spells out the process that a taxing authority must follow and does not provide it with the authority to bypass any of those required steps. In addition, although language in Title 67 provides that "nothing in this section shall be construed to prevent the authorized collector of the tax from pursuing any civil remedy available to the collector by law . . . to collect any taxes due or delinquent under this part," Tenn. Code Ann. § 67-4-1408, that language does not obviate the requirement that a taxing authority follow the prescribed process prior to pursuing a judicial remedy. Therefore, the plaintiff's argument that administrative remedies, which are provided in

7

Title 67 and adopted by the Enabling Act and the Tax Ordinance, are not mandatory fails.

Before addressing the parties' respective arguments regarding the plaintiff's argument that the application of the exhaustion requirement in this case would be an exercise in futility, the court pauses to consider the context of the instant litigation. In recent years, municipalities around the country have brought similar lawsuits against ITCs such as the defendants, alleging that those entities failed to pay hotel occupancy taxes like the one levied by the City of Goodlettsville. *See City of Charleston v. Hotels.com L.P.*, 520 F. Supp. 2d 757, 764 (D.S.C. 2007) (listing cases). Because of the relative novelty of the claims asserted by the plaintiff here and by other municipalities, not to mention the relative novelty of the defendants' business model, the legal questions presented by such cases remain "extremely unsettled" and "lack . . . established precedent." *Id.* For this reason, a close examination of the cases on which the parties rely is both appropriate and necessary.

The defendants, for their part, rely on *City of Philadelphia v. Hotels.com*, No. 860, 2006 Phila. Ct. Com. Pl. LEXIS 218 (Pa. C.P. Phila. May 25, 2006). In that case, a Pennsylvania state court ruled that it lacked subject matter jurisdiction because the Pennsylvania Supreme Court previously had ruled that a Tax Review Board had exclusive jurisdiction over disputes about local tax liability in the City of Philadelphia. *Id.* at *3-4 (citing *Cherry v. City of Phila.*, 692 A.2d 1082, 1084 (Pa. 1997)). The court went on to note that it was "troubled" that the city filed a lawsuit without first performing an audit, providing notice, or otherwise attempting to collect the tax, powers that were expressly delegated to the city's taxing authority. *Id.* at *5-6. The court stated that, just as a taxpayer is obligated to exhaust his or her administrative remedies, so too was the city, as it "already possesse[d] a remedy for redress of the wrong it claims." *Id.* at

8

*8.     Similarly, a California court stayed lawsuits brought by the cities of Los Angeles and San Diego, holding that it lacked subject matter jurisdiction because the plaintiffs had not exhausted their administrative remedies.  *City of L.A., Cal.  v. Hotels.com, L.P.*, No. BC 326693, slip op. at 4 (Cal. Super. Ct. July 26, 2007); *City of San Diego, Cal. v. Hotels.com, L.P.*, No. GIC 861117, slip op. at 3 (Cal. Super. Ct. July 26, 2007).  In those cases, the court rejected the plaintiffs' argument that exhaustion would be futile, holding that the plaintiff could not sidestep the exhaustion requirement "on the basis of speculation that the [defendant] later may refuse to participate in the administrative process," but that, if the defendants subsequently refused to participate in the process, the plaintiffs could then argue that the court should consider the administrative process exhausted.  *City of L.A.*, slip op. at 9-10; *see City of San Diego*, slip op. at 5 (adopting reasoning articulated in *City of L.A.*).  Finally, the defendants rely on *City of Fayetteville v. Hotels.com, L.P.*, No. CV-07-567-1, slip op. (Ark. Cir. Ct. July 25, 2008).  There, an Arkansas state court granted the defendants' motion to dismiss, finding that Arkansas law provided a mandatory administrative process for a municipality seeking to assess and collect taxes.  *Id.* at 3-4.  The *City of Fayetteville* court held that compliance with that process would not be futile and that the process provided the plaintiff with an adequate remedy.[4]  *Id.* at 4.

        The plaintiff, by contrast, urges that *City of Charleston* provides better guidance for this court.  In that case, a federal district court in South Carolina ruled that the plaintiff was not

_____

        [4]The court's discussion of the futility requirement is perplexing and relatively unpersuasive, however, as the court stated that, "under Arkansas law, until a litigant pursues the administrative process to its end, it cannot be said that it is futile to exhaust those remedies before filing suit."  *City of Fayetteville*, No. CV-07-567-1, slip op. at 2.  This ruling essentially equates futility with exhaustion, thereby eviscerating the futility exception to the exhaustion requirement, as a plaintiff is essentially unable to demonstrate futility other than by pursuing the administrative process "to its end"—that is, by exhausting its administrative remedies.

9

obligated to exhaust its administrative remedies by conducting an audit prior to bringing a lawsuit, as provided for by the relevant municipal ordinance, because exhaustion would be futile. *City of Charleston*, 520 F. Supp. 2d at 769. In light of the fact that the defendants were "vigorously litigating" the question of their liability under similar municipal tax ordinances in jurisdictions around the country, the court found that the defendants would not have permitted the plaintiff to conduct an audit and, thus, that the administrative process would have been futile. *Id.* at 770. The court declined to require the plaintiff to participate in such a "charade," which, it found, would not serve the purposes of the exhaustion requirement. *Id.*

Two cases from Georgia also lend support to the plaintiff's argument. In *City of Atlanta v. Hotels.com, L.P.*, No. S08G0568, 2009 Ga. LEXIS 96 (Ga. Mar. 23, 2009), the Supreme Court of Georgia vacated a lower court's ruling that it lacked subject matter jurisdiction because the plaintiff failed to exhaust its administrative remedies, requiring the lower court to first resolve the threshold question, presented in the plaintiff's claim for declaratory judgment, of whether the tax ordinance at issue applied to the defendant ITCs. The court noted that the question of whether the tax ordinance applied to the defendants was "a strenuously contested issue" and held that the city "cannot be required to exhaust an administrative process as a prerequisite to obtaining a determination that the ordinance prescribing that process even applies in the first place." *Id.* at *6. The court went on to note that the defendants' "insistence" that they were not subject to the tax ordinance reflected that they would not acquiesce to an audit in any case. *Id.* at *11. Similarly, a lower Georgia court denied a defendant ITC's motion for summary judgment, holding that a factual issue existed with respect to the futility of the required administrative remedy, given that the defendant "maintains the position that it is not subject to the authority of

Plaintiff Columbus or any other municipality and that it cannot be required to charge, collect or remit taxes on the room rate." *Columbus v. Expedia, Inc.*, Civil Action No. SU-06-CV-1794-7, slip op. at 17-19 (Ga. Super. Ct. Sept. 22, 2008). The court went on to note that the administrative remedy would be inadequate because the parties disputed "certain fundamental legal issues" relating to the defendant's obligations under the tax ordinance that could only be resolved by a court. *Id.* at 21-23.

It must be noted that these cases arose in different jurisdictions and involved the application of different tax ordinances. Also, the precise administrative procedures required varied from case to case, and there may be variations among different states' application of the exhaustion doctrine. Keeping those differences in mind, however, the court finds the reasoning articulated by the court in *City of Charleston* most compelling, and that case guides the court in resolving the question of exhaustion raised by the defendants here.

The fundamental issue underlying the plaintiff's claims is not merely its allegation that the defendants have an outstanding tax obligation but, rather, the legal question of whether the defendants are subject to the Tax Ordinance in the first instance, regardless of the manner in which the plaintiff's claims are framed.[5] This is an issue that the defendants hotly dispute, as evidenced both by the ongoing litigation in other jurisdictions around the country and in the position, taken by the defendants in this case, that they are not subject to the Tax Ordinance.

---

[5]Although factual disputes most certainly exist between the parties, as the defendants rightly note, those disputes are not the core issue presented by the plaintiff's claims.

11

Moreover, this is not an issue that may be resolved through the administrative process but, rather, will require a judicial resolution.[6]

Forcing the plaintiff to engage in the administrative process here would serve little purpose, let alone the purposes that underlie the exhaustion doctrine. Judicial involvement at this stage would not be premature, as it would not impinge upon the agency's efficient function, nor is the legal question at issue here one with respect to which the agency's experience or expertise would be especially beneficial. Although the administrative process might provide some benefit, to the extent that it would establish a factual record for judicial review, that factual record will be developed in any case, whether in the context of an administrative proceeding or a judicial one, and this court will no doubt be called upon to resolve the legal question of the application of the Tax Ordinance to the defendants, regardless of the outcome of any assessment that the plaintiff might conduct. Moreover, although the defendants assert that the plaintiff has failed to demonstrate "absolute futility" and that futility is not established simply because a plaintiff believes that the administrative process is not likely to provide relief, the defendants have made clear that they object not to the *amount of tax owing*, but rather to the claim that *they owe any tax at all* under the Tax Ordinance. Requiring the plaintiff to first conduct an audit and

_____

[6]The defendants assert that statutory interpretation is the province of an administrative agency, citing *H&R Block E. Tax Servs. v. Dep't of Commerce & Indus.*, 267 S.W.3d 848 (Tenn. Ct. App. 2008). However, *H&R Block* addressed only the degree of deference that courts should give to an agency ruling on a question of law; it did not mandate that such determinations be made, in the first instance, by such an agency. Specifically, the court noted that "courts will give full consideration to the . . . interpretation of [a legislative] act by administrative boards whose duty it is to enforce it," but that an agency's "construction of [a] statute and application of the law to the facts is a question of law" that was not entitled to a presumption of correctness. *Id.* at *15 (citations omitted). Thus, although a court may give "consideration and respect" to an agency's interpretation of a statute, that interpretation is "neither controlling nor presumed correct." *Id.* at *18.

determine the precise amount of taxes owed by the defendants will not provide the plaintiff with

relief. As stated by the court in *City of Charleston*,

> requiring the Plaintiffs to follow the administrative procedure would be an
> exercise in futility, and would in no way facilitate the ultimate resolution of the
> dispute between the parties. Given that Defendants are vigorously litigating the
> issue of whether they should be subject to municipal accommodations taxes, not
> only in this jurisdiction but in other jurisdictions across the nation, the court does
> not believe that Defendants would have allowed the [Plaintiffs] to inspect and
> audit their records in order to make an assessment of the extent of tax liability.
> Even if they had, the court certainly does not believe that Defendants would have
> paid the assessed tax, and the issue would have inevitably ended up in federal
> court to determine whether the Ordinances apply to Defendants or not. The twin
> goals of the exhaustion requirement are administrative agency autonomy and
> judicial efficiency. Requiring Plaintiffs to go through the charade of sending the
> Director of Business License to look through Defendants' records only to be
> denied access or payment would serve neither goal.

*City of Charleston*, 520 F. Supp. 2d at 770. Here, as in *City of Charleston*, requiring the plaintiff

to exhaust administrative remedies would be a charade and would simply delay the inevitable

judicial resolution of the legal issues presented, while providing little or no benefit for the court,

the agency, or the parties. The plaintiff is excused from the exhaustion requirement on the

grounds that exhaustion would be futile or useless.

## II.     Failure to State a Claim

The defendants also move to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, arguing that the plaintiff has failed to state a claim.

### A.     Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court

will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487

F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The

13

Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

14

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

     B.     *Claim Under the Goodlettsville City Code*

     The defendants assert that the plaintiff has failed to state a claim under the Goodlettsville City Code, arguing (1) that they do not fall within the purview of the Tax Ordinance, as they are not the "operators" of hotels, and (2) that the plaintiff has already received all hotel occupancy taxes owing under the Tax Ordinance.

     These are issues that will turn on the interpretation of the Tax Ordinance itself. Under Tennessee law, "the guiding principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *E.g.*, *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993)). Courts seeking to determine legislative intent "must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language," and statutes relating to the same subject matter must be construed together. *Id.* (citing *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295 (Tenn. 1992) and *Belle-Aire Village, Inc. v. Ghorley*, 574

15

S.W.2d 723, 725 (Tenn. 1978)). Additionally, according to the principle of *ejusdem generis*, general words that follow special words are construed as applying to the same class or kind of items as the special words that precede them. *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005). Similarly, according to the related principle of *noscitur a sociis*, the meaning of "questionable or doubtful" terms is ascertained by reference to the meaning of other associated terms. *Id.* at 828.

Where statutory language is unambiguous, a court must "apply its plain meaning in its normal and accepted use, without a forced interpretation." *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007) (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)); *see also Sallee*, 171 S.W.3d at 828 ("Legislative intent is derived from the plain and ordinary meaning of the statutory language unless the statute is ambiguous."). Where language is ambiguous, however, a court may consider the statute's legislative history to assist it in divining legislative intent. *Lawrence*, 244 S.W.3d at 309 (citing *Storey v. Bradford Furniture Co.*, 910 S.W.2d 857, 859 (Tenn. 1995)). Moreover, to the extent that language in a revenue statute is ambiguous, such statutes are to be "liberally construed in favor of the taxpayer and strictly construed against the taxing authority." *E.g.*, *Oliver v. King*, 612 S.W.2d 152, 154 (Tenn. 1981) (quoting *Int'l Harvester Co. v. Carr*, 466 S.W.2d 207, 214 (Tenn. 1971)).

The Tax Ordinance provides that a tax is levied "upon the privilege of occupancy in any hotel of each transient in an amount equal to three percent (3%) of the consideration charged by the operator." Goodlettsville City Code § 5-502. That tax is to be collected and remitted by "all operators who lease, rent or charge for occupancy within a hotel in the City of Goodlettsville."

16

*Id.* § 5-504.  The Tax Ordinance defines a "hotel" as "any structure or any portion of any structures which is occupied or intended or designed for occupancy by transients for dwelling, lodging or sleeping purposes . . . furnished to transients for a consideration," *id.* § 5-501(2), and defines an "operator" as "the person operating the hotel whether as owner, lessee, or otherwise," *id.* § 5-501(4).

       1.      Definition of hotel operator

At issue, first, is whether the defendants, all of whom are internet-based travel companies, constitute "operators who lease, rent or charge for occupancy within a hotel" under the terms of the Tax Ordinance.

In the Complaint, the plaintiff alleges that each of the defendants "purchases and takes title to inventories of hotel rooms" and then "re-sells the rooms to consumers."[7]  (Docket No. 1 ¶ 28.)  The plaintiff further asserts that the defendants serve as merchants of record for the transactions with consumers and collect payment from those consumers for both the rooms and the hotel occupancy tax, which, the plaintiff alleges, the defendants fail to remit as required by the Tax Ordinance.  (*Id.*)  The plaintiff has clearly alleged that, once the defendants purchase hotel rooms, it is the defendants, rather than the hotels themselves, that control those rooms, to the extent that the defendants define the rates paid for those rooms, establish cancellation policies, determine who may stay in those rooms, and charge the consumers who ultimately rent those rooms.  The hotels' interaction with consumers is entirely functional and does not entail

---

    [7]The plaintiff has also alleged that this characterization of these transactions is consistent with the defendants' own characterizations of those transactions in certain public filings. (Docket No. 1 ¶¶ 28-32.)  Although the defendants take factual issue with the allegation that they buy and sell rooms, in the context of a motion to dismiss, the plaintiff's allegations must be accepted as true.

17

the exchange of any money; the hotels' role is simply to provide a consumer who has purchased a room from one of the defendants with access to that room. Thus, it is beyond argument that the plaintiff has alleged that the defendants lease, rent, or charge for occupancy of hotel rooms that they have purchased.

The defendants, however, maintain that they cannot be considered "operators" because the operation of a hotel entails direct management of a physical structure, and they simply "facilitate the making of hotel reservations." However, this understates both the defendants' role and what it means to function as an operator. As the defendants themselves note, the dictionary definition of the term "operate" means "to control or direct the function of." Webster's II New College Dictionary 767 (1995). Having purchased hotel rooms, the defendants controlled those rooms and directed the subsequent sale of those rooms to consumers. Once the defendants purchased those rooms, no one had the ability to exert control over the use or disposal of those rooms, other than the defendants. Thus, the defendants clearly are alleged to have controlled or directed the function of the hotel rooms they had purchased, falling squarely within the plain meaning of the term "operate."[8] Moreover, this interpretation is consistent with the purpose of the Tax Ordinance. In delineating the tax that is owed, the Tax Ordinance plainly demonstrates

---

[8]The defendants also argue that the terms of the Tax Ordinance indicate that an operator must be a single individual or entity and, thus, that they may not be considered part of an operating group in connection with the owners of the hotels. First, although the Tax Ordinance defines "operator" as "the person operating the hotel," it subsequently defines "person" as "any individual, firm, partnership, joint venture, . . . or any other group or combination acting as a unit," Goodlettsville City Code § 5-501(5), belying the defendants' argument that an operator must be a single individual or entity. Moreover, the defendants fall within the definition of the term "operator" as a result of the control they exercise over the rooms that they purchase and re-sell, regardless of the logistical role that others may play by, for example, providing a key to the room that a consumer has purchased from the defendants.

18

that the legislative intent was to assess a tax on the consideration *paid by consumers* for hotel rooms. The fact that consumers, indeed, paid the defendants for use of rooms that the defendants controlled lends further support to the conclusion that the defendants are operators as defined by the Tax Ordinance and that the amounts charged by the defendants are subject to the tax.

The defendants argue that there is no indication that the legislature intended to tax anyone other than the hotels directly, and they rely on two tax forms issued by the City that indicate that hotels and motels are the only entities required to remit hotel occupancy taxes. (*See* Docket No. 50 Exs. F & G.) With respect to these exhibits, the court notes initially that documents outside the pleadings are not generally considered in ruling on a motion to dismiss. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001). In any case, the exhibits do not support the defendants' argument. It is not in dispute that, at the time the Tax Ordinance was enacted, neither entities such as the defendants nor the technology that enables the defendants' business models existed. Clearly, the drafters of the Tax Ordinance could not specifically have foreseen the ordinance's application to the defendants themselves, and the plaintiff does not make this argument. However, the Tax Ordinance makes clear that the drafters intended to tax the consideration paid by consumers for hotel rooms, and the "operator" language is such that it applies to the defendants, regardless of the fact that the defendants did not exist at the time that language was drafted and regardless of the fact that the tax forms issued by the City identified only hotels and motels as subject to the Tax Ordinance.

The defendants also rely on language in the Tax Ordinance that provides that an operator is one who operates a hotel, "whether as owner, lessee, or otherwise," and argue that they are not owners nor lessees and cannot fall under the general "otherwise" term under the principle of

*ejusdem generis*.  The defendants argue that, as the terms "owner" and "lessee" connote a possessory interest, so too must the "otherwise" term be understood to connote a possessory interest.  However, the defendants' argument that they lack any possessory interest in the rooms they re-sell is disingenuous and contrary to the facts pleaded in the Complaint.  The plaintiff has alleged that, once the defendants purchase those rooms, no one save the defendants—or the consumers to whom the defendants re-sell those rooms—has any possessory right to occupy those rooms on the dates for which they were purchased.  Thus, the defendants' interest in the rooms is sufficiently similar to the possessory interest of an owner or lessee such that the defendants fit quite comfortably within the general "otherwise" term, the principle of *ejusdem generis* not to the contrary.

The defendants rely heavily on *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308 (4th Cir. 2009), in which the Fourth Circuit affirmed a lower court ruling dismissing the county's claims against many of the same ITCs that are defendants in this case.  The application of the tax ordinance at issue in *Pitt*, like that here, depended in part on whether the defendants could be considered "operators" of hotels or "similar type businesses."  *Id.* at 313.  The court found that the defendants were not operators, as they played "no role in the day-to-day operation or management of the hotels", and were not "similar type businesses," as they did not physically provide rooms to consumers.[9]  *Id.*  The defendants also rely on *Louisville / Jefferson County*

---

[9]The defendants also rely on *Oxford Investments, Inc. v. Mashburn*, 729 S.W.2d 96 (Tenn. Ct. App. 1987), in which the Tennessee Court of Appeals found that a hotel owner was not the hotel's operator because it "was excluded from managerial or operational functions" and "did not receive a percentage of the rents or exercise any control over the manner in which the hotel operated."  However, in contrast to *Oxford Investments*, the defendants here are alleged to have engaged in managerial functions to the extent that they re-sold those rooms to consumers, established rates and cancellation policies, and charged rents and taxes.

20

*Metro Gov't v. Hotels.com, L.P.*, No. 3:06-CV-480-R, 2008 U.S. Dist. LEXIS 76415 (W.D. Ky.

2008), in which a federal district court considered whether the defendant ITCs were "doing

business as motor courts, motels, hotels, inns or like or similar accommodations businesses."

The court ruled that the ordinance did not apply to the defendants because they were not a "like

or similar accommodations business," as they did not have ownership or physical control of the

rooms they offered for rent.[10]  *Id.* at *16.

A number of other courts, however, have come to contrary conclusions.  In *City of*

*Charleston*, a federal district court held that the defendant ITCs were subject to the tax ordinance

at issue, which applied to all entities "in the business of furnishing accommodations to

transients."  *City of Charleston*, 520 F. Supp. 2d at 768.  The court noted that the "core purpose"

of the ordinance was to tax the money spent by transients on hotel rooms and that, therefore, the

---

[10]In addition to these cases, the defendants rely on three private letter rulings issued by
tax authorities in Massachusetts, Alabama, and Arizona, which were the subject of a motion to
strike made by the plaintiff that was denied by this court.  (Docket No. 103.)  These letter rulings
each state that ITCs such as the defendants are not considered hotel operators under the terms of
the relevant tax statutes.  (*See* Docket No. 95 Exs. B-D.)  With respect to the weight to be
afforded these documents, private letter rulings cannot be relied upon as precedent.  *E.g.*, *Liberty
Nat'l Bank & Trust Co. v. U.S.*, 867 F.2d 302, 305 (6th Cir. 1989).  Although such letter rulings
may be considered to the extent they are persuasive, *see Glass v. Comm'r*, 471 F.3d 698, 711
(6th Cir. 2006) (noting that a private letter ruling issued by the Internal Revenue Service may not
be relied upon as precedent, but may provide persuasive authority), these particular letter rulings
are not persuasive, as each is premised on facts that differ significantly from the facts here, most
notably in that the ITCs at issue in the letter rulings are stipulated never to have obtained any
possessory interest in the rooms, in contrast to the allegations made by the plaintiff here.  The
persuasive power of the letter rulings is further diminished by the plaintiff's assertion that one or
more of the defendants sought a number of such letter rulings and obtained at least one ruling,
and possibly other rulings, that reached a conclusion contrary to those of the Massachusetts,
Alabama, and Arizona authorities, and that, because of the private nature of these rulings, it is
impossible for the plaintiff or the court to evaluate the extent to which the Massachusetts,
Alabama, and Arizona rulings were simply "cherry-picked" as legal authority by the defendants,
because those rulings happen to support the defendants' position in this litigation.

relevant question was "not who is actually performing the upkeep of the room, but rather who is accepting money in exchange for 'supplying' the room." *Id.* Because the defendants supplied accommodations to transients, they were therefore subject to the tax. *Id.* Similarly, a federal district court in Texas ruled that the question of whether the defendant ITCs were subject to a tax assessed on entities "owning, operating, managing or controlling any hotel" was, at the least, a question of fact, because the defendants are the entities that collect money paid by the rooms' occupants. *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2007 U.S. Dist. LEXIS 39757, at *8 (W.D. Tex. Mar. 20, 2007). Another federal district court ruled that the defendant ITCs constituted hotel owners pursuant to the relevant tax ordinance, as they received consideration from consumers for the hotel rooms they sold. *City of Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840-DRH, 2006 U.S. Dist. LEXIS 47085, at *15-16 (S.D. Ill. July 12, 2006). The court in *City of Fairview Heights* went on to note that a contrary holding

> would open up a potentially gaping loophole: a hotel operator could simply incorporate a shell entity or make some other similar arrangement, rent the hotel rooms to that entity for a nominal amount, and then re-rent the rooms to consumers, who would be taxed only on the nominal sum paid by the side entity to the operator. This tactic—permissible under the continuation of the Defendants' logic—would place the hotel operator at a competitive advantage, because it would either increase her profit margins or lower the cost of her rooms relative to her competitors. However, it would at the same time almost entirely eviscerate the Ordinance, and it cannot be what the drafters had in mind.

*Id.* at *19-20.

In considering these cases, the court is cognizant that the language of the statutes at issue varies and that the language of the statute at issue in *Pitt* (the Fourth Circuit case) is arguably the most similar to that of the Goodlettsville Tax Ordinance, in that both ordinances use the "operator" language to define those entities that are subject to the tax. The court is unconvinced,

however, that the statutory language at issue in the other cases, particularly in *City of Charleston* and *City of San Antonio*, which addressed tax ordinances that applied, respectively, to those "furnishing" hotel rooms and to those "owning, operating, managing, or controlling" hotels, is so different in meaning or connotation as to render those cases inapposite here. Instead, the reasoning articulated by the courts in those cases is far more compelling than that articulated by the court in *Pitt* and lends support to the conclusion that the plaintiff has alleged that the defendants constitute hotel operators under the Tax Ordinance by virtue of the control the defendants exerted over the rooms they purchased and re-sold. As the court in *City of Charleston* stated,

> If consumers access a website, use it to book a hotel room, pay the website directly, and never pay the hotel, or interact with the hotel at all until they arrive, the court cannot accept Defendants' assertion that they do not furnish accommodations to consumers.

520 F. Supp. 2d at 768. For the same reasons, and based on the legislative intent as reflected in the plain meaning of the terms of the Tax Ordinance, the plaintiff has alleged that the defendants constitute operators who lease, rent, or charge for occupancy within a hotel and, thus, that the defendants are subject to the Tax Ordinance.

        2.      Receipt of amounts owing

In addition to arguing that the Tax Ordinance does not apply to them as they do not constitute hotel operators, the defendants also argue that the plaintiff's claim under the Goodlettsville City Code must be dismissed because the plaintiff received all amounts owing under the Tax Ordinance. This argument also fails.

Under the terms of the Tax Ordinance, the tax is assessed on the consideration charged to the transient by the hotel operator. Goodlettsville City Code § 5-502. Because the court has

found that the defendants fall within the definition of the term "operator," the tax must be assessed on the consideration that the defendants charge. The defendants argue, however, that the difference between the wholesale rate that they pay and the retail rate that they charge is not subject to the tax, as that differential amount constitutes compensation for the defendants' reservation service, rather than consideration for the rooms themselves.[11] That is not consistent with the Tax Ordinance, however, which assesses the tax on the entire amount paid by a transient. Surely a hotel is required to collect and remit the tax based on the entire rate it charges, despite the fact that some portion of that rate may be attributable to expenses other than the room itself, such as upkeep of common spaces or insurance. So, too, is the entire amount charged by the defendants subject to the tax.

In sum, the plaintiff has alleged that the defendants are both subject to the Tax Ordinance and that they do not remit taxes as required by that ordinance. For these reasons, the defendants' motion to dismiss the plaintiff's claim under the Goodlettsville City Code will be denied.

---

[11]To reiterate, the crux of the plaintiff's allegation is that the defendants collect the tax from consumers, based on the retail rate that the consumers pay, but do not remit that tax as required by the Tax Ordinance. The plaintiff acknowledges that the hotels themselves collect and remit the tax from the defendants, based on the wholesale rate that the defendants pay. Although the question of whether the Tax Ordinance requires the tax to be paid twice, first in the context of the transaction between hotels and the defendants and, again, in the context of transaction between the defendants and consumers, is a fair one, the parties have not explicitly raised that issue on this motion. Obviously, to the extent that the plaintiff may be entitled to recover taxes from the defendants, the defendants would be entitled to an offset of the amount of the tax that has been remitted by the hotels themselves, to avoid the unjust enrichment of the plaintiff.

24

C.      *Unjust Enrichment Claim*

To state a claim for unjust enrichment under Tennessee law, a plaintiff must establish "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. L.L.C. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

The defendants first argue that the plaintiff has not established that it conferred a benefit on the defendants, as the amounts that the plaintiff alleges are owing under the Tax Ordinance were conferred on the defendants by the consumers who paid the defendants in exchange for rooms, rather than by the plaintiff itself. However, "the underlying principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." *Id.* In accordance with this principle, a benefit is defined as "any form of advantage that has a measurable value," and it need not be conferred on the defendant directly by the plaintiff. *Id.* Although the actual money owing under the Tax Ordinance may have been paid to the defendants by consumers, rather than by the plaintiff, those funds were fundamentally the property of the plaintiff. By failing to remit those funds to the plaintiff, the defendants obtained a benefit without justly compensating the plaintiff. Thus, the plaintiff has stated this element of its unjust enrichment claim.

The defendants' argument that the plaintiff failed to exhaust its administrative remedies by seeking relief directly from the hotels themselves likewise fails. The plaintiff has alleged that a benefit was conferred on the defendants as a result of consumers' payment of the required

25

taxes, which the defendants did not subsequently remit to the plaintiff as required by the Tax Ordinance. The argument that the plaintiff should be required to seek a remedy from the hotels themselves, which were not party to the transaction between the defendants and consumers, is nonsensical, and such "exhaustion" would necessarily be futile, as the plaintiff would not be able to obtain the relief it seeks from the hotels in any case.

Thus, the plaintiff has stated a claim of unjust enrichment.

D.     *Conversion Claim*

Conversion consists of "the appropriation of [property] to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Mammoth Cave Prod. Credit Assoc. v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977) (citing *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965)). To establish liability, "the defendant need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so." *Id.*

According to the defendants, the plaintiff's conversion claim fails because the plaintiff has alleged only "neglect of a legal duty to pay taxes," rather than a "tortious act amounting to conversion." However, the plaintiff has sufficiently alleged that, under the Tax Ordinance, the defendants were obligated to collect and remit the tax to the plaintiff and, by the same token, that the plaintiff was entitled to possession of those amounts. None of the authority on which the defendants rely supports its assertion that its failure to remit the tax does not amount to its intent to exercise dominion and control over property belonging to the plaintiff sufficient to establish a conversion claim.

26

Finally, the defendants argue that the plaintiff's conversion claim fails because the plaintiff has not made a demand for payment of the funds it alleges are owing. However, a demand is only required where the property in question is lawfully acquired. *E.g.*, *Lance Prods, Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988). Here, however, the plaintiff has alleged that the defendants' actions were, from the outset, unlawful, and thus the demand requirement is not applicable. *See City of Charleston*, 520 F.2d at 772; *City of San Antonio*, 2007 U.S. Dist. LEXIS 39757, at *13.

Therefore, the plaintiff has stated a claim of conversion.

## CONCLUSION

For the reasons discussed herein, the defendants' motion to dismiss will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge