IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE CITY OF GOODLETTSVILLE, TENNESSEE on behalf of itself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-cv-00561 |
| | ) | Judge Trauger |
| PRICELINE.COM, INC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the court is the Motion for Class Certification filed by plaintiff City of Goodlettsville (Docket No. 153), the defendants' response (Docket No. 165), and the plaintiff's reply (Docket No. 173). For the reasons discussed below, the plaintiff's motion will be granted.

## BACKGROUND

The City of Goodlettsville, Tennessee (the "City") has brought this suit to recover hotel occupancy taxes that the defendants have allegedly underpaid.[1] The defendants, which include Priceline.com, Inc., Travelocity.com, Inc., Expedia, Inc., and Orbitz, LLC, are Internet travel companies ("ITCs") that allow consumers to book hotel reservations online. The City now seeks to certify a class of all Tennessee municipalities and counties that impose hotel occupancy taxes.

The plaintiff's Complaint alleges that the defendants offer services to hotels and

---

[1] Unless otherwise noted, the facts and allegations are drawn from the parties' submissions and the plaintiff's Complaint (Docket No. 1).

1

consumers through two business models: the "Agency Model" and the "Merchant Model." Under the Agency Model, an ITC functions as a hotel's agent, booking a consumer into a room, charging a service fee to the hotel, and sometimes charging a service fee to the consumer. The hotel sets the price of the room and is the merchant of record for the transaction, and the consumer pays the hotel directly.

In contrast, the Complaint alleges that an ITC operating under the Merchant Model "purchases and takes title" to inventories of rooms from hotels at a negotiated wholesale rate. (Docket No. 1 ¶ 28.) The ITC then re-sells those rooms to consumers at a higher retail rate. Under this business model, the ITC sets the retail price and is the merchant of record for the consumer transaction. The consumer pays rental charges to the ITC, not to the hotel. The Merchant Model is allegedly more profitable for the ITCs and has become the dominant business model in recent years.

The plaintiff alleges that ITCs using the Merchant Model have systematically underpaid hotel occupancy taxes. The City imposes a tax that is levied "upon the privilege of occupancy in any hotel of each transient in an amount equal to three percent (3%) of the consideration charged by the operator." Goodlettsville City Code § 5-502. "Operator" is defined as "the person operating the hotel whether as owner, lessee, or otherwise," *id.* § 5-501(4), and "consideration" is defined as "the consideration charged, whether or not received, for the occupancy in a hotel valued in money . . . without any deduction therefrom whatsoever." *Id.* § 5-501(1). The tax is collected from "transients," or hotel guests, and remitted to the City by "all operators who lease, rent or charge for occupancy within a hotel in the City of Goodlettsville." *Id.* § 5-504.

The City contends that the tax owed on rooms rented under the Merchant Model is 3% of the *retail rate* paid by the consumer to the ITC.  The defendants, however, have allegedly remitted taxes calculated from the lower *wholesale rates* paid by the ITC to the hotel.  The court previously denied a Motion to Dismiss in which the defendants argued that they are not subject to the City's tax ordinance because they cannot be considered "operators," as defined in the City's code.  (Docket No. 109 at 17-23.)  The court also rejected the defendants' argument that the difference between the retail rate and the wholesale rate is not subject to the tax.  (*Id.* at 23-24.)

The City now seeks to certify a class of counties and municipalities that includes:

> Plaintiff and all other political subdivisions within the State of Tennessee that impose a tax upon the privilege of occupancy in any hotel, inn, tourist camp, tourist cabin, tourist court, motel, or any other place in which rooms, lodgings or accommodations are furnished to transients for a consideration.

(Docket No. 154 at 2.)  The plaintiff has identified 128 potential class members, including itself.

The City contends that these class members' hotel occupancy taxes are, in certain material respects, identical to the City's tax.  Specifically, each class member's ordinance makes hotel operators responsible for collecting the tax from transients and remitting it to the relevant tax authority, and each ordinance states that the tax owed shall be calculated as a percentage "of the consideration" or "of the rate" that is "charged by the operator."  (*See* Docket No. 174, Ex. 1; Docket Nos. 183-194.)  Each ordinance defines "operator" as "the person operating the hotel

whether as owner, lessee or otherwise."[2]  (*See id.*)

This uniformity among ordinances is present because the authority of a Tennessee county or municipality to levy a hotel occupancy tax arises from one of three sources: (1) Tenn. Code Ann. § 7-4-101 *et seq.*, which applies to jurisdictions that have adopted a metropolitan form of government; (2) Tenn. Code Ann. § 67-4-1401 *et seq.*, which applies to jurisdictions that have adopted "home rule" pursuant to Article XI, Section 9 of the Tennessee Constitution; or (3) so-called "Private Acts" of the Tennessee legislature regarding a specific city or county.[3]  These enabling acts require that the "operator" collect the hotel occupancy tax from the "transient" and remit it to the relevant tax authority.  Tenn. Code Ann. §§ 7-4-103, 67-4-1404(a).  They also require that the amount collected be calculated as a percentage of the "consideration charged by the operator."  *Id.* §§ 7-4-102(a)(1), 67-4-1402(a).  The various Private Acts employ the same framework.  (*See* Docket No. 174, Ex. 1; Docket Nos. 183-194.)

The enabling acts define the terms "operator," "transient," and "consideration."  An "operator" is "the person operating the hotel, whether as owner, lessee or otherwise."  Tenn. Code Ann. §§ 7-4-101(6), 67-4-1401(6).  A "transient" is "any person who exercises occupancy or is entitled to occupancy for any rooms, lodgings or accommodations in a hotel for a period of less than thirty (30) days."  *Id.* § 7-4-101(11); *see also id.* § 67-4-1401(7) (giving a substantially

_____

[2] Several jurisdictions specify in their definitions that a governmental entity can be an "operator."  (Docket No. 174, Ex. 1; *e.g.*, Docket No. 184 at 1 (Campbell County ordinance stating that "'Operator' means the person operating the hotel whether as owner, lessee or otherwise, *and shall include governmental entities*.") (emphasis added).)

[3] The plaintiff has filed a collection of the Private Acts and local ordinances that authorize and codify each of the 128 class members' hotel occupancy taxes.  (Docket Nos. 183-194.)

4

identical definition).  "Consideration" is "the consideration charged, whether or not received, for the occupancy in a hotel valued in money . . . without any deduction therefrom whatsoever."  *Id.* § 7-4-101(1); *see also id.* § 67-4-1401(1).  Again, the various Private Acts use the same definitions for these three terms.  (*See* Docket No. 174, Ex. 1; Docket Nos. 183-194.)

## ANALYSIS

The plaintiff has filed a Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23.  The defendants argue that the proposed class does not meet the requirements of Rule 23(a) or 23(b)(3).

## I.      Class Certification Standard

The principal purpose of class actions is to achieve efficiency and economy of litigation, with respect to both the parties and the courts.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982).  Before certifying a class, the district court must conduct a "rigorous analysis" of the prerequisites of Federal Rule of Civil Procedure 23.  *Id.* at 161.  A district court has broad discretion in deciding whether to certify a class, although it must exercise that discretion within the framework of Rule 23.  *Beattie v. Centurytel, Inc.*, 511 F.3d 554, 559-60 (6th Cir. 2007); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

"Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit."  *Beattie*, 511 F.3d at 560.  But in evaluating whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings," because the relevant issues are often "enmeshed" within the legal and factual considerations raised by the litigation.  *Falcon*, 457 U.S. at 160.  The party seeking class certification bears the

5

burden of establishing that the requisites are met.  *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003).

## II.     Rule 23(a) Requirements

Any party seeking class certification must meet all four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – before a class can be certified.  Fed. R. Civ. P. 23(a); *In re Am. Med. Sys.*, 75 F.3d at 1079.  The court will discuss each of these prerequisites in turn.

### A.     Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  The Sixth Circuit has stated that, although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement."  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).  According to Newberg's often-cited treatise, "the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."  1 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 3:5 (4th ed.).

Here, the plaintiff has identified 128 counties and municipalities that are members of the proposed class.  This number is high enough that joinder would be impracticable, and the defendants do not argue otherwise.  Therefore, the plaintiff has satisfied the numerosity requirement.

### B.     Commonality

6

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common." *In re Am. Med. Sys.*, 75 F.3d at 1080. The resolution of the common issue must "advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Here, questions of both law and fact exist that are common to the entire class. As explained further in the court's discussion of Rule 23(b)(3)'s predominance requirement, each of the relevant tax ordinances uses a substantively identical definition of "operator," and the primary issue in this litigation is whether the defendants are "operators" who are responsible for remitting tax payments. Each defendant's business practices are uniform across the state of Tennessee, so this issue will be susceptible to common proof.

Accordingly, the proposed class satisfies the requirement that all class members have at least one issue in common. *See County of Monroe, Fla. v. Priceline.com, Inc.*, No. 09-10004-CIV, 2010 U.S. Dist. LEXIS 25066, at *18 (S.D. Fla. Mar. 15, 2010) (finding commonality when "[a]ll of the class members' [tax] ordinances track the language of the Enabling Act verbatim or nearly verbatim"); *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2008 U.S. Dist. LEXIS 58793, at *17 (W.D. Tex. May 27, 2008) (finding commonality because common issues included "whether Defendants should be required to collect and remit hotel occupancy taxes, based on their 'control' over hotels operations, if any").

## C.    Typicality

7

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Together with Rule 23(a)(4)'s adequacy requirement, the typicality requirement focuses on the characteristics of the proposed class representative. *See Newberg on Class Actions* § 3:13. "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.*

A proposed class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082 (citation omitted). Thus, in situations where typicality is found, "the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* In *Sprague*, the Sixth Circuit summarized the "premise" of the typicality requirement: "[A]s goes the claim of the named plaintiff, so go the claims of the class." 133 F.3d at 399.

Here, the City's claim is typical of the class. As discussed in more detail below, despite the defendants' argument that the various ordinances have some differences, the ordinances are identical in certain material respects. Specifically, under each ordinance, (1) the tax is calculated from a percentage of the consideration or rate paid by the transient, and (2) the hotel "operator" is responsible for collecting and remitting the tax. The theory underlying the City's claim – that tax on Merchant Model transactions is owed on the difference between the wholesale rate and

8

the retail rate – is the same as the theory underlying every other class members' claim. If the jury finds that the defendants have underpaid the City's hotel occupancy tax, it will necessarily mean that the defendants have underpaid taxes to the other class members.

Because the resolution of the common questions will determine the outcome of both the City's and the absent class members' claims, the City has satisfied the typicality requirement. *See City of San Antonio*, 2008 U.S. Dist. LEXIS 58793 at *19 (finding typicality because, "[w]hile each putative class member has its own ordinance, the claims arising thereunder, and the legal and remedial theories on which the claims are based, are the same").

### D.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To fulfill this requirement, the plaintiff must show that: (1) the class representative has common interests with the rest of the class; and (2) the class representative will vigorously prosecute the interests of the class through qualified counsel. *Beattie*, 511 F.3d at 563. The common-interest criterion requires that there be no antagonism or conflict of interest between the class representative and the other members of the class. *In re Am. Med. Sys.*, 75 F.3d at 1083. The second criterion inquires into the competence of counsel. *Id.*

Here, the defendants do not suggest that the City suffers from any conflict of interest with the absent class members. Given that the City's claim is typical of the class, the court is satisfied that the City has sufficient common interests to adequately represent the class. The defendants also do not argue that the plaintiff's counsel is unqualified. The plaintiff has submitted evidence that its counsel, including the firms of Lovell Mitchell & Barth, LLP, Lovell Stewart Halebian,

9

LLP, and Freed & Weiss LLC, is experienced in litigating complex and class action cases. Indeed, the plaintiff's counsel has already successfully contested the defendants' Motion to Dismiss.  It appears to the court that class counsel is "qualified, experienced and generally able to conduct the litigation."  *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).

The defendants do argue, however, that the City itself is not engaged enough in this litigation to serve as an adequate class representative.  (Docket No. 165 at 26-28.)  The defendants claim that the deposition of the plaintiff's city manager shows that he: (1) does not know the amount of damages the City is claiming, the number of Goodlettsville hotel rooms booked by online companies, or the years to which this suit applies; (2) did not review this case before the Complaint was filed; (3) did not participate in responding to the defendant's discovery requests; (4) is unaware of the specifics regarding other class members' tax ordinances; and (5) "is not prepared to pay the costs to pursue this class action."  (*Id.* at 27-28.)

There is some precedent for denying class certification because the named plaintiff is completely uninvolved in the litigation.  But as noted in one case cited by the defendants, "[i]t is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification, unless his ignorance unduly impacts his ability to vigorously prosecute the action."  *In re Ocean Bank*, No. 06 C 3515, 2007 U.S. Dist. LEXIS 29443, at *14 (N.D. Ill. Apr. 9, 2007) (citation omitted).  "The burden in demonstrating that the class representative meets this standard is not difficult."  *Id.*; *see also Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 451 (S.D. Ohio 2009) ("A court may deny class certification when class representatives have 'so little knowledge of and involvement in the class action that they

10

would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'"); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (same).

The defendants' arguments are belied by the fact that the plaintiff has already vigorously prosecuted this suit for the past two years, culminating in this meritorious motion for class certification. Also, despite the defendants' contention, the plaintiff's city manager has been actively involved in the discovery process. He testified that he reviewed his affidavit and interrogatory responses before signing them. (Docket No. 160, Ex. 1 at 118, 129-30.) He also testified that he keeps a file regarding this suit. (*Id.* at 119.) Although the city manager's testimony reveals that he is unaware of certain specifics about the case, nothing suggests that this will impair the City's ability to prosecute the suit and protect its own interests. The cases cited by the defendants illustrate that something more is required to make a class representative inadequate under Rule 23(a). *See In re Ocean Bank*, 2007 U.S. Dist. LEXIS at *26 ("[The named plaintiff's] testimony on at least one occasion suggests not just apathy, but active antagonism to her case."); *Bodner v. Oreck Direct, LLC*, No. C 06-4756, 2007 U.S. Dist. LEXIS 30408, at *3 (N.D. Cal. Apr. 25, 2007) ("Plaintiff met his attorney in person for the first time the day before his deposition in this action."); *Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002) ("[The named plaintiff] not surprisingly has pursued the suit in a most lackadaisical manner. In the eight years that it has been pending, he has yet to identify any other members of either the larger class or his subclass.").

Accordingly, the court finds that the plaintiff has satisfied Rule 23(a)'s adequacy

requirement.  *See Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 318 (N.D. Ohio 2009) (finding that the adequacy standard was met when the plaintiff "participated in discovery, reviewed the amended complaint, and talked to his counsel about the duties of a class representative").

## III.     Rule 23(b) Requirements

Having found that the plaintiff and the proposed class meet the prerequisites of Rule 23(a), the court now turns to Rule 23(b).  The plaintiff argues that class certification is appropriate under Rule 23(b)(3), which contains two requirements: (1) common questions of law or fact must "predominate over any questions affecting only individual members"; and (2) class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.     Predominance

Rule 23(b)(3)'s predominance requirement parallels Rule 23(a)'s commonality requirement, in that both require the existence of common issues of fact or law, but the former is "more stringent."  *In re Am. Med. Sys.*, 75 F.3d at 1084 (citation omitted); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997) (finding that the predominance requirement is "far more demanding").   The plaintiff must show that issues subject to generalized proof predominate over those issues subject to individualized proof.  *Beattie*, 511 F.3d at 564.  If the circumstances of the case indicate that a substantial part of each plaintiff's claim will depend on proof unique to the individual, common issues do not predominate and certification under Rule 23(b)(3) is inappropriate.  *In re Am. Med. Sys.*, 75 F.3d at 1084.

12

The plaintiffs have identified the following common questions of law and fact:

> 1) whether Defendants purchase hotel rooms or the right to occupy hotel rooms at "wholesale" rates;
>
> 2) whether Defendants re-sell hotel rooms or the rights to occupy hotel rooms at higher, retail rates;
>
> 3) whether Defendants are "Operators" pursuant to hotel tax ordinances;
>
> 4) whether Defendants['] "Merchant Model" transactions are taxable transactions under the hotel tax statutes of the members of the Class;
>
> 5) whether Defendants were and are required to collect hotel taxes from the occupants;
>
> 6) whether Defendants were and are required to remit hotel taxes to the members of the Class . . . ;
>
> 7) the method of calculation of taxes that must be collected and remitted (i.e., based upon "wholesale" or "retail" transaction prices) . . . .

(Docket No. 154 at 16.)

The court agrees that these common questions predominate over any issues that pertain to individual class members. With respect to the resolution of these questions, the class members' tax ordinances are materially identical. Each ordinance requires hotel "operators" to collect taxes from consumers and remit them to the relevant tax authority, and each ordinance uses the same definition of "operator." (Docket No. 174, Ex. 1.) Each ordinance also provides that the amount of the tax is a percentage of the rate or consideration charged by the operator. (*Id.*; Docket Nos. 184-194.) The defendants do not dispute that the ordinances are identical in these key respects.

13

In addition, the defendants do not dispute that their business practices are consistent across the state and do not vary by class member.  In fact, the defendants commonly enter into agreements with hotel chains that apply to that chain's properties throughout the state of Tennessee.  (*See, e.g.*, Docket No. 160 (agreement between defendant Travelweb LLC and Marriott International, Inc. that applies to Fairfield Inn, Residence Inn, and other Marriott hotel brands).)  *See also City of San Antonio*, 2008 U.S. Dist. LEXIS 58793, at *36 ("[T]he Court finds that while every hotel contract may not contain the same terms, the material aspects of the agreements and the practical implications thereof are the same or substantially similar.").

Effectively, the uniformity of the class members' ordinances and the defendants' conduct means that if the defendants have violated the City's hotel occupancy tax, they have violated the hotel occupancy taxes of all of the class members.  The threshold question of liability is subject to class-wide proof, and it predominates over any other issue in the case.  *Cf. id.* at *32 ("[T]he overriding fact issue will be whether Defendants exercised 'control' over hotel operations, as that term is used in the ordinances.").  At least three federal district courts from other states have certified classes in similar cases.  *Id.*; *County of Monroe*, 2010 U.S. Dist. LEXIS 25066; *City of Gallup, N.M. v. Hotels.com, L.P.*, No. 07-CV-00644, slip op. (D.N.M. July 7, 2009).

Nevertheless, the defendants argue that numerous individual issues overshadow these common issues.  First, they claim that there are questions as to whether the tax ordinances of certain class members are valid.  (Docket No. 165 at 13-18.)  They argue that several jurisdictions have improperly enacted taxes pursuant to Tenn. Code Ann. § 7-4-101 *et seq.* or Tenn. Code Ann. §  67-4-1401 *et seq.*, when instead a Private Act from the state legislature was

14

necessary to authorize the tax. They further argue that several other jurisdictions did not properly pass their taxes by vote of the local governing board, as required by law. Because of these supposed defects, the defendants claim that the court "will be required to consider numerous factual issues that will require a careful review of each tax ordinance's specific language and the actions of each local government in approving the applicable tax." (Docket No. 165 at 18.)

The assertion that a class member's tax is invalid is an affirmative defense as to that class member. "Sixth Circuit precedent provides that class certification should not be denied merely because some class members may be subject to [individual defenses]." *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 90-91 (M.D. Tenn. 2004) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997)); *see also Beattie*, 511 F.3d at 564 ("[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.") (citation and quotation marks omitted). Furthermore, the defendants have only identified ten jurisdictions that are affected by these alleged defects. It will not be prohibitively complex for the parties to address, and for the court to consider, the validity of ten ordinances.

Second, the defendants raise a number of issues regarding the applicability of the various hotel occupancy taxes. They point out that the ordinances vary as to "what the tax is imposed upon." (Docket No. 165 at 18-20.) For example, some ordinances specifically include or exclude certain types of properties, such as bed and breakfasts or recreational vehicle parks. Some ordinances exclude rooms that are rented for a certain amount of time, such as for 30 or 90

15

days, and some exclude rooms rented by schools, religious organizations, or non-profit organizations.

The defendants further contend that difficulties will arise because (1) the ordinances employ different tax rates, (2) the parties will need to determine which municipality's or county's tax applies to a given transaction, and (3) the parties will need to determine which version of the ordinance was in effect at the time of a given transaction. (Docket No. 165 at 20-22.) In addition, some ordinances impose penalties, such as fines, for an operator's failure to collect and remit taxes, and some ordinances allow hotel operators to keep a percentage of the tax as compensation for their collection efforts. (*Id.*)

The court finds that these individual issues are all directed toward the calculation of damages, not liability. The minor variances that the defendants point out will only affect the *amount* of the defendants' underpayment. None of these issues affect the primary, threshold question in this case: whether the defendants, generally speaking, are liable for occupancy taxes calculated from the retail rates that they charge consumers. Accordingly, these individual issues do not bar a finding of predominance. *County of Monroe*, 2010 U.S. Dist. LEXIS 25066 at *29; *see also Beattie*, 511 F.3d at 564 ("[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.") (citation omitted). As the Sixth Circuit has noted, "[t]here are a number of management tools available to a district court to address any individualized damage issues." *Beattie*, 511 F.3d at 562 (citation omitted) (alteration in original).

Basically, the defendants contend that it will be overwhelmingly complex to apply so

16

many different ordinances. But the force of this argument is significantly undercut by the fact that the defendants *already* remit occupancy taxes to hotels based on wholesale rates. Obviously, the defendants are able to determine which types of transactions are covered by which taxes. *See City of San Antonio*, 2008 U.S. Dist. LEXIS 58793 at *26 ("[T]here is nothing in the record to suggest that Defendants, who have been calculating taxes and fees for years, are confused about specific charges to the hotel occupant and whether a tax is assessed thereon.").

Assuming that the defendants have retained basic data regarding their past transactions, if the defendants are ultimately found to be liable, it will be possible to mechanically determine the amount of tax underpayment. It appears that, for each relevant transaction, the parties can simply: (1) identify the amount of hotel occupancy tax that was calculated from the wholesale rate and was actually remitted to the hotel; (2) calculate the amount of tax that should have been remitted, based on the retail rate; and (3) subtract (1) from (2). Indeed, this is exactly what the court in *City of San Antonio* found:

> Plaintiff has proposed a simple mathematical formula for calculating damages in this case: A (room mark up) + B (service fees) x C (tax rate) = D (tax underpayment). As the corporate representatives have testified, supplying the numbers for this formula is a relatively easy task. . . . Most Defendants have retained all hotel transaction data since the inception of business.

2008 U.S. Dist. LEXIS 58793 at *47 (citation omitted). This straightforward approach will not necessitate, as the defendants claim, 128 complex "mini-trials" regarding damages. Furthermore, if certain ordinances impose additional penalties or statutory interest, "the cities entitled to [these amounts] can be readily identified and the amount of such interest or penalties can be calculated and presented to the Court post-verdict." *Id.* at *52.

17

Finally, the defendants state that they plan to assert an affirmative defense based on the Commerce Clause of the U.S. Constitution, premised on the fact that they do not have "sufficient physical presence in or nexus with" Tennessee or its political subdivisions to support the class members' taxing authority. (Docket No. 165 at 22-23.) According to the defendants, this defense will require individualized proof regarding their physical presence in each county or municipality.

The court is not convinced. First, nothing suggests that the defendants have a physical presence in certain counties, but not others. Indeed, the defendants claim that they lack a nexus with "the State of Tennessee" as a whole. (Docket No. 165 at 22.) If that is the case, class-wide resolution of the issue is appropriate. *See County of Monroe*, 2010 U.S. Dist. LEXIS 25066 at *31 ("Defendants' *Commerce Clause* defense will either pertain to every class member or to none of them. Essentially, individualized proof as to any county on this issue will result in a finding that it is applicable to every county."). Second, "this argument is a red herring because the occupant of the room (who is the taxpayer) is already being taxed, and the Defendants have already been collecting and remitting taxes on the rooms they sell." *City of San Antonio*, 2008 U.S. Dist. LEXIS 58793 at *55.

In sum, the court finds that the common issues identified by the plaintiff predominate over the individual issues identified by the defendants.

## B. Superiority

Rule 23(b)(3) provides a non-exhaustive list of factors that a court should consider in determining whether a class action suit is a superior method of adjudicating the dispute. The

18

rule provides that "pertinent" matters include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Regardless of these factors, the court finds that "class certification here is a vastly superior method of adjudication because the common issues will only have to be heard and decided once, thereby promoting judicial efficiency." *Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 348 (M.D. Tenn. 2008); *see also Daffin*, 458 F.3d at 554 ("Permitting individual [class members] to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues . . . that apply equally to the whole class."). This court agrees with the discussion of the issue contained in *City of San Antonio*:

> [F]orcing the municipalities to litigate these issues individually would be a waste of judicial resources and a waste of the parties' resources. It could also lead to inconsistent results, despite the consistency in the municipal tax ordinances and the consistency in Defendants' business practices. A clear, consistent result, whether it favors one side or the other, would clearly benefit all parties to the litigation, especially considering the length of time that this issue has been debated at both the local and national level.

2008 U.S. Dist. LEXIS 58793 at *58-59.

Regarding the specific factors listed in Rule 23(b)(3), it appears that no other Tennessee

19

municipalities or counties have filed suit to recover hotel occupancy taxes from ITCs.  If particular class members nevertheless wish to litigate their cases individually, they may simply opt out of the class.  As noted by the court in *County of Monroe*, county and municipal governments are "better equipped to assess their rights and to evaluate the consequences of opting out than the lay individuals who comprise most classes."  2010 U.S. Dist. LEXIS 25066 at *35 n.15.  Furthermore, this court is a natural forum for the class action, because it is located in Nashville, the state's capital and second most populous city.  Finally, given the number of issues subject to class-wide proof, "there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases."  *Id.* at *34-35.

Accordingly, the court finds that a class action is a superior vehicle for resolving the claims here.[4]  Because the plaintiff has met all of Rule 23's requirements, class certification is appropriate.[5]

## IV.     Unjust Enrichment and Conversion Claims

---

[4] The Sixth Circuit has held that class actions are superior when each class member's individual recovery will be small enough that the class members are unlikely to bring individual actions.  *E.g.*, *Beattie*, 511 F.3d at 566-67.  Here, the plaintiff claims that recovery by some class members will be "relatively small," (Docket No. 154 at 25), but it has submitted no supporting evidence on this point.  *But see City of San Antonio*, 2008 U.S. Dist. LEXIS 58793 at *53 ("Common sense dictates that many of the cities would have a negative value lawsuit if they pursued this matter on an individual basis.").  Regardless, the fact that each class member might recover a substantial amount of damages is not enough, standing alone, to bar class certification.

[5] The defendants' contention that the plaintiff has not identified an appropriate or precisely identifiable class is meritless.  (*See* Docket No. 165 at 28-29.)  Furthermore, *City of Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840, 2008 U.S. Dist. LEXIS 25646 (S.D. Ill. Mar. 31, 2008), cited by the defendants, is inapposite.  In that case, the court refused certification because (1) the class included jurisdictions that had not actually passed a hotel tax, and (2) the named plaintiff was not a member of the proposed class.  *Id.* at *8-9.  Neither of these situations is present here.

20

Finally, the defendants argue that class certification is inappropriate for the plaintiff's unjust enrichment and conversion claims because both claims will require individualized showings by each class member. (Docket No. 165 at 29-31.)

The defendants are correct that, typically, unjust enrichment claims are ill-suited for class-wide treatment. In Tennessee, the elements of unjust enrichment are: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quotation marks and citation omitted) (alteration in original). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Id.*

Usually, this would require the court to "examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). This "inquiry into the individualized equities attendant to each class member" typically makes "unjust enrichment claims inappropriate for class action treatment." *Id.* But here, the court has already held that the main thrust of the City's unjust enrichment claim is that, "[b]y failing to remit [tax] funds to the plaintiff, the defendants obtained a benefit without justly compensating the plaintiff." (Docket No. 109 at 25.) The inequity thus flows directly and automatically from the alleged underpayment of taxes. This will not require the kind of individualized inquiry that is usually necessary for resolution of an unjust enrichment claim. *See County of Monroe*, 2010 U.S. Dist.

21

LEXIS 25066 at *32 ("[I]t is difficult to conceive of any significant equitable differences between class members, and Defendants do not suggest any.").

Similarly, the defendants argue that a class-wide conversion claim "will necessarily require proof that a Defendant committed a knowingly tortious act with respect to each and every member of the class." (Docket No. 165 at 30.) The Tennessee Court of Appeals recently discussed the tort of conversion:

> In Tennessee, conversion is the appropriation of tangible property to a party's own use and benefit in exclusion or defiance of the owner's rights. Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights.
>
> To constitute conversion, the defendant must intend to convert the plaintiff's property. However, [t]his intention does not necessarily have to be a matter of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him. In other words, the defendant need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so; good faith is generally immaterial.

*Thompson v. Thompson*, No. W2008-00489-COA-R3-CV, 2009 Tenn. App. LEXIS 99, at *45-46 (Tenn. Ct. App. Mar. 12, 2009) (citations and quotation marks omitted and paragraph break added) (alteration in original).

Thus, if the defendants have failed to remit taxes for which they are liable, even in good faith, the class members will be able to show conversion. (*See* Docket No. 109 at 26 ("[T]he plaintiff has sufficiently alleged that, under the Tax Ordinance, the defendants were obligated to

22

collect and remit the tax to the plaintiff and, by the same token, that the plaintiff was entitled to possession of those amounts. None of the authority on which the defendants rely supports its assertion that its failure to remit the tax does not amount to its intent to exercise dominion and control over property belonging to the plaintiff sufficient to establish a conversion claim.").) The class members will not need to make any additional, individualized showing of intent.

Because the unjust enrichment and conversion claims are essentially dependent on the class members' tax claims, they will rely on the same common evidence as the tax claims. Therefore, they are amenable to class-wide adjudication.

## CONCLUSION

For all of the reasons discussed above, the court will grant the plaintiff's Motion for Class Certification.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

23