IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE CITY OF GOODLETTSVILLE, TENNESSEE on behalf of itself and all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) PRICELINE.COM, INC, *et al.*, ) ) Defendants. ) | Case No. 3:08-cv-00561 Judge Trauger |

## MEMORANDUM AND ORDER

Pending before the court is the defendants' Motion to Exclude Expert Report and for Enlargement of Time to Serve Rebuttal Report (Docket No. 254), to which the plaintiff has filed a response (Docket No. 261), and in support of which the defendants have filed a reply (Docket No. 270). For the reasons discussed below, the defendants' motion will be granted.

## BACKGROUND

The City of Goodlettsville, Tennessee (the "City") has brought this class action to recover hotel occupancy taxes that the defendants have allegedly underpaid.[1] The defendants, which include Priceline.com, Inc., Travelocity.com, Inc., Expedia, Inc., and Orbitz, LLC, are Internet travel companies ("ITCs") that allow consumers to book hotel reservations online.

The defendants allegedly offer services to hotels and consumers via the "merchant"

---

[1] Unless otherwise noted, the facts and allegations are drawn from the parties' submissions and the plaintiff's Complaint (Docket No. 1).

1

business model.  Under this model, the ITC purchases and takes title to inventories of rooms from hotels at a negotiated wholesale rate.  The ITC then re-sells those rooms to consumers at a higher retail rate.  The ITC sets the retail price and is the merchant of record for the consumer transaction, and the consumer pays rental charges directly to the ITC, not to the hotel.

The plaintiff alleges that ITCs using the merchant model have systematically underpaid hotel occupancy taxes.  The City imposes a tax "upon the privilege of occupancy in any hotel of each transient in an amount equal to three percent (3%) of the consideration charged by the operator."  Goodlettsville City Code § 5-502.  "Operator" is defined as "the person operating the hotel whether as owner, lessee, or otherwise," *id.* § 5-501(4), and "consideration" is defined as "the consideration charged, whether or not received, for the occupancy in a hotel valued in money . . . without any deduction therefrom whatsoever."  *Id.* § 5-501(1).  The tax is collected from "transients," or hotel guests, and is remitted to the City by "all operators who lease, rent or charge for occupancy within a hotel in the City of Goodlettsville."  *Id.* § 5-504.  The City represents a class of Tennessee counties and municipalities that employ effectively identical tax schemes.

The City contends that the tax owed on rooms rented under the merchant model is three percent of the *retail rate* paid by the consumer to the ITC.  The defendants, however, have allegedly remitted taxes calculated from the lower *wholesale rate* paid by the ITC to the hotel.  The plaintiff seeks to recover the difference and has asserted claims for: (1) violation of the tax ordinance; (2) unjust enrichment; and (3) conversion.

The plaintiff intends to offer an expert report authored by Towson University marketing

2

professor Dr. Thomas J. Maronick. The report, which addresses consumers' perceptions regarding the amount of hotel occupancy tax collected and remitted by the ITCs, contains the following summary of Maronick's opinions:

> [I]t is my expert opinion that the method of communicating the taxes and service charges to consumers used by all the [ITCs] has the tendency and capacity to mislead those consumers. . . . [T]he vast majority of [consumer survey] respondents . . . believed the taxes were based on the "retail rate" listed on the webpage. . . . [S]ince the tax amount [the ITCs] actually remit . . . is based on the lower amount that [the ITCs] actually pay to the hotel for the room (the "wholesale rate"), consumers are being deceived into believing the amount of tax that is remitted to the taxing jurisdiction is higher than it is. . . .
>
> [T]he [ITCs'] practice of "bundling" the tax and service charges is, in my opinion, an attempt to hide important information from consumers seeking to book a hotel reservation – including the amount of taxes the [ITCs] are actually collecting on behalf of the taxing jurisdictions. . . . Because the consumer is misled as to the amount of the taxes collected, the OTCs effectively deprive the political jurisdiction of taxes the consumer believes were collected on the jurisdiction's behalf.

(Docket No. 255, Ex. 1 at 3-4.)

The defendant has filed a Motion to Exclude Maronick's expert report, pursuant to Federal Rules of Evidence 401 and 402. Alternatively, the defendants request an enlargement of time to respond to the report.

## **ANALYSIS**

The defendants argue that Maronick's report, which deals exclusively with consumers' perceptions regarding the taxes collected by the ITCs, is irrelevant to this case. (Docket No. 255 at 4-7.) In response, the plaintiff argues that the report is relevant to its unjust enrichment and

conversion claims. (Docket No. 261 at 8-12.)

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* 401. In addition, Rule 702 only permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* 702.

"Like all evidence, the admissibility of expert testimony is . . . subject to a determination of relevancy under Rule 401 . . . ." *United States v. Geiger*, 303 Fed. Appx. 327, 329 (6th Cir. 2008); *see also Beck v. Haik*, 377 F.3d 624, 637 (6th Cir. 2004) (requiring that an expert's testimony must "meet[] the general relevance requirement of Fed. R. Evid. 401 and the expert opinion requirements of Fed. R. Evid. 702"), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009). Thus, when determining admissibility, "the court must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Bunke*, No. 09-3311, 2011 U.S. App. LEXIS 1158, at *20 (6th Cir. Jan. 19, 2011) (quoting *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000)).

Here, the opinions expressed in Maronick's report are irrelevant to the issues in this case. First, his opinions are plainly irrelevant to the plaintiff's claim for unpaid hotel occupancy taxes. That claim alleges that, under the applicable tax ordinance, the defendants were required to remit three percent of "the consideration charged . . . for the occupancy in a hotel." Goodlettsville City Code § 5-501(1), -502. By its terms, the tax is calculated from the amount charged to hotel

4

consumers. The tax *is not* calculated from the amount of tax money that hotel consumers believe is being remitted to the government. Consequently, consumers' beliefs have no bearing on the amount of tax that the defendants owe the City.[2] The plaintiff does not argue to the contrary.

Second, Maronick's opinions are irrelevant to the plaintiff's unjust enrichment claim, because that claim is premised entirely on the unpaid tax. To state a claim for unjust enrichment, a plaintiff must establish: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus. LLC v Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quotation marks and alteration omitted). In its previous Memorandum regarding the defendants' Motion to Dismiss, the court held that "the actual money owing under the Tax Ordinance . . . [was] fundamentally the property of the plaintiff." (Docket No. 109 at 25.) The court refused to dismiss the unjust enrichment claim because, "[b]y failing to remit those funds to the plaintiff, the defendants obtained a benefit without justly compensating the plaintiff." (*Id.*)

The plaintiff argues that the "deceptive manner in which [the tax monies] are collected by the Defendants from consumers" is relevant to show that the defendants' retention of the unpaid taxes is inequitable. (Docket No. 261 at 10.) But any inequity *as to the City* arises exclusively because the defendants withheld money that they owed under the tax ordinance. Retention of unpaid tax is unjust regardless of any consumer deception, and, even if the defendants did

---

[2] This is equally true for the absent class members. The applicable tax ordinances all feature identical language. (*See* Docket No. 208 at 4-5, 13.)

deceive their consumers, that deception had no effect on the amount of the defendants' tax liability. Alternatively, if the defendants deceived their consumers into paying them more than the proper amount of the tax, the City cannot recover that money under an unjust enrichment theory, because it was not "a benefit conferred upon the defendant[s] by" the City.[3] *Freeman*, 172 S.W.3d at 525. Either way, the alleged consumer deception is irrelevant to the plaintiff's claim.

Finally, for the same reasons, Maronick's opinions are irrelevant to the plaintiff's conversion claim. Conversion is "the appropriation of [property] to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977) (citing *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965)). The court previously refused to dismiss the conversion claim because "the plaintiff has sufficiently alleged that, under the Tax Ordinance, the defendants were obligated to collect and remit the tax to the plaintiff and, by the same token, that the plaintiff was entitled to possession of those amounts." (Docket No. 109 at 26.) Once again, the plaintiff's claim depends entirely on the defendants' unpaid tax.

The plaintiff argues that the "[d]efendants took certain moneys from their consumers under the false pretense that they were remitting them to the relevant Tennessee taxing authorities" and that this "is plainly . . . actionable in a claim of Conversion." (Docket No. 261

---

[3] Of course, the consumers would have a viable unjust enrichment claim. In fact, the defendants note that three cases alleging consumer deception or breach of contract were previously filed against them by consumer plaintiffs. (Docket No. 255 at 8-13.) In one case, the plaintiffs served an expert report, substantially similar to the instant report, authored by Maronick. (*Id.* at 12.)

at 11.) If these allegations of consumer deception are true, *the consumers* might have an actionable conversion claim. But these allegations are irrelevant to the City's claim, because the consumers' beliefs had no bearing on whether the City was "entitled to possess[]" any money retained by the defendants. (Docket No. 109 at 26.) Instead, such entitlement stemmed exclusively from the application of the tax ordinance.

In sum, the plaintiff's three claims are essentially duplicative – they all seek to recover money that the defendants owed under the hotel occupancy tax ordinance. The defendants' tax liability, however, is unrelated to any alleged consumer deception. Accordingly, the opinions expressed in Maronick's expert report are irrelevant to this action.[4]

## CONCLUSION

For all of the reasons discussed herein, the defendants' Motion to Exclude Expert Report (Docket No. 254) is **GRANTED**. The expert report of Dr. Thomas J. Maronick, and testimony regarding the opinions contained therein, shall be **EXCLUDED** at trial. The defendants' alternative request for an enlargement of time to serve a rebuttal report, contained within the

---

[4] The plaintiff points out that, in a similar suit pending in the Northern District of Illinois, the defendants recently filed a summary judgment motion in which they asserted that they "clearly explain all applicable charges to consumers." (Docket No. 261 at 12.) A statement in a different suit, however, is insufficient to show that consumer deception is relevant here.

The plaintiff also states, without explanation, that "[o]ne obvious manner in which consumer (and hence taxing authority) perception is relevant, of course, is that it may toll the applicable limitations period." (*Id.*) But the plaintiff does not identify the relevant statute of limitations, explain why the limitations period is at issue, or explain how the alleged consumer deception would toll it. This single, unsupported statement is not enough to show that consumer deception is relevant.

Finally, the plaintiff argues that the defendants' motion is premature because discovery is ongoing. (*Id.* at 13-14.) But facts revealed during discovery will not change the basic nature of the plaintiff's claims.

7

motion, is **DENIED** as moot.

It is so ordered.

Entered this 27th day of April 2011.

                                                                                                                    _____
ALETA A. TRAUGER
United States District Judge